# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| HASAN BAYADI, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:15cv00575 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| HAROLD CLARKE, *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | United States District Judge |

Hasan Bayadi, a Virginia inmate proceeding *pro se*, filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that Wallens Ridge State Prison ("Wallens Ridge") Warden Fleming[1] and Virginia Department of Corrections ("VDOC") Director Clarke retaliated against him and, later, Wallens Ridge Institutional Ombudsman Ravizee rejected a grievance in an effort to "cover up" the retaliation. Defendants filed a motion for summary judgment and Bayadi responded, making this matter ripe for disposition. After reviewing the record, I conclude that defendants' motion for summary judgment must be granted.

## I.

Bayadi alleges that on August 31, 2015, he was transferred from Keen Mountain Correctional Center ("Keen Mountain"), a security level 4 facility, to Wallens Ridge, a security level 5 facility, "for no valid reason." Upon his arrival at Wallens Ridge, Bayadi was placed in segregation. On September 8, 2015, Bayadi, who is Muslim, was moved to general population and placed in a cell with an inmate "who is a known member of" the Aryan Brotherhood and who "hates Muslims."[2] Bayadi alleges that the other inmate told Bayadi that he and Warden Fleming "go way back" and that Fleming "wants" him to "beat [Bayadi] up really bad." Bayadi

---

[1] Before becoming the Warden of Wallens Ridge on January 10, 2015, defendant Fleming was the Warden of Keen Mountain Correctional Center.

[2] It is undisputed that neither Bayadi nor the other inmate had any housing restrictions or security alerts in their records when they were housed together.

also alleges that the other inmate told Bayadi that if Bayadi "bothered him at all, he would bash [Bayadi's] head in with his TV, because he can afford to buy a new one . . . ." Bayadi does not allege that the other inmate ever actually hurt him. Bayadi was moved to segregation on September 30, 2015 after he stated that he feared for his life in the pod to which he was assigned.

Bayadi alleges that his transfer to Wallens Ridge and his cell assignment were retaliation for him having previously filed two civil rights actions against defendants Fleming and Clarke. Bayadi states that defendant Ravizee dismissed a grievance concerning his transfer to Wallens Ridge in an effort to "cover up" Clarke and Fleming's retaliatory transfer.

In their motion for summary judgment, defendants argue that Bayadi failed to exhaust administrative remedies and that the claims nevertheless are meritless. It is undisputed that Bayadi filed an informal complaint at Wallens Ridge concerning his transfer. It is also undisputed that Bayadi filed a regular grievance at Wallens Ridge concerning his transfer, which defendant Ravizee rejected at intake, indicating that the grievance should have been filed at Keen Mountain. Bayadi appealed the intake decision to no avail. Bayadi did not file any grievances at Keen Mountain concerning his transfer and that Bayadi did not file any grievances at Wallens Ridge concerning his cell assignment.

## II.

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for

the non-movant. *Id.* The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine issue of fact for trial. *Id.* at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *see Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) ("Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."). However, summary judgment is not appropriate where the ultimate factual conclusions to be drawn are in dispute. *Overstreet v. Ky. Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir. 1991). In adjudicating a motion for summary judgment, a court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Instead, a court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979).

## III.

VDOC Operating Procedure ("OP") § 866.1, Offender Grievance Procedure, is the mechanism used to resolve inmate complaints and requires that, before submitting a formal grievance, the inmate must demonstrate that he has made a good faith effort to resolve the grievance informally through the procedures available at the institution to secure institutional services or resolve complaints.

If the informal resolution effort fails, the inmate must initiate a regular grievance by filling out the standard "Regular Grievance" form. Prior to review of the substance of a grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance. A grievance meeting the criteria for acceptance is logged in on the day it is received.[3] If the grievance does not meet the criteria for acceptance, prison officials complete the "Intake" section of the grievance and return the grievance to the inmate. If the inmate desires a review of the intake decision, he must send the grievance form to the Regional Ombudsman. Pursuant to the OP, if an offender has been transferred, the inmate should submit the informal complaint and subsequent grievance to the facility where the issue originated. When an indigent inmate has been transferred, the Institutional Ombudsman/Grievance Coordinator will forward the informal complaint and subsequent grievance to the facility where the issue originated.

## IV.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). "'[T]he language of section 1997e(a) clearly contemplates exhaustion *prior* to the commencement of the action as an indispensible requirement, thus requiring an outright dismissal [of unexhausted claims] rather

---

[3] Up to three levels of review for a regular grievance exist. The Facility Unit Head of the facility in which the offender is confined is responsible for Level I review. If the offender is dissatisfied with the determination at Level I, he may appeal the decision to Level II, a review which is conducted by the Regional Administrator, the Health Services Director, or the Chief of Operations for Offender Management Services. The Level II response informs the offender whether he may pursue an appeal to Level III.

4

than issuing continuances so that exhaustion may occur.'" *Carpenter v. Hercules*, No. 3:10cv241, 2012 U.S. Dist. LEXIS 72096, at *12, 2012 WL 1895996, at *4 (E.D. Va. May 23, 2012) (emphasis in original) (quoting *Johnson v. Jones*, 340 F.3d 624, 628 (8th Cir. 2003)). The exhaustion requirement "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reduc[es] litigation to the extent complaints are satisfactorily resolved, and improv[es] litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219. Failure to exhaust all levels of administrative review is not proper exhaustion and will bar an inmate's § 1983 action. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F.Supp.2d 544, 548 (E.D. Va. 1999) ("[T]he PLRA amendment made clear that exhaustion is now mandatory."). But, I am "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d at 725.

It is undisputed that Bayadi did not exhaust administrative remedies concerning his allegations about his cell assignment at Wallens Ridge. And Bayadi has not demonstrated that the grievance process was otherwise unavailable to him. Accordingly, I will grant defendants' motion for summary judgment as to his claims concerning his cell assignment.

5

However, defendants have not demonstrated that they are entitled to summary judgment regarding Bayadi's exhaustion of his claims about his transfer. Bayadi filed an informal complaint and regular grievance at Wallens Ridge concerning his transfer. The regular grievance was rejected at intake, indicating that Bayadi should submit it to Keen Mountain. Bayadi appealed and the intake decision was upheld. Defendants argue that Bayadi failed to exhaust administrative remedies because he did not file the grievance at Keen Mountain, where the issue originated, as required by the OP. However, the OP also states that when an "indigent offender" is transferred, "the Institutional Ombudsman/Grievance Coordinator will forward the informal complaint and subsequent grievance to the facility where the issue originated." Bayadi alleges that he was and is indigent. OP 803.1 defines an "indigent offender" as "[a]n offender with less than $5.00 in his/her account for discretionary spending during the previous month and has no job or other source of income that provided as much as $5.00 during the previous month." According to the inmate account filed in this case and signed by a financial tech at Wallens Ridge, Bayadi had a $0 balance and no deposits into his account for at least five months preceding his filing of the informal complaint and grievance. Thus, it appears that Bayadi was an "indigent offender" at the time he filed his informal complaint and grievance. And, it appears that Bayadi's informal complaint and grievance forms were not forwarded to Keen Mountain, as provided for in the OP. Accordingly, I will deny defendants' motion for summary judgment regarding exhaustion of Bayadi's claims related to his transfer.

**V.**

Bayadi's claim that the defendants retaliated against him by transferring him to Wallens Ridge fails. It is well-settled that state officials may not retaliate against an inmate for exercising his constitutional rights, including his right to access the courts. *See American Civ. Liberties*

*Union v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993). To state a First Amendment § 1983 retaliation claim, an inmate must establish three elements: (1) the inmate's right to speak was protected; (2) the defendant's alleged retaliatory action adversely affected the inmate's constitutionally protected speech; and (3) a causal relationship existed between the inmate's speech and the defendant's retaliatory action. *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685-86 (4th Cir. 2000) (citations omitted). Turning to the second element, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of [the protected] rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir.2005) (internal quotation marks and citations omitted). In order to sustain a cognizable retaliation claim under § 1983, an inmate must point to specific facts supporting his claim of retaliation. *White v. White*, 886 F.2d 271 (4th Cir. 1989). "[B]are assertions of retaliation do not establish a claim of constitutional dimension." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (federal courts should regard inmate claims of retaliation with "skepticism"). Additionally, an inmate must come forward with specific evidence "establish[ing] that but for the retaliatory motive, the complained of incident . . . would not have occurred." *Brizuela v. Immigration Ctrs. of Am.*, No. 1:15cv1662, 2016 U.S. Dist. LEXIS 170161, at *12 (E.D. Va. Dec. 7, 2016) (citing *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)).

Bayadi's conclusory assertions are insufficient to establish a retaliation claim, much less refute the defendants' motion for summary judgment. Bayadi fails to identify any evidence which would establish that his access to court was adversely affected by the prison transfer or that the transfer would "likely deter a person of ordinary firmness" from accessing the court. He also has not presented any evidence that a causal relationship existed between Bayadi's filing of

the civil actions and his transfer. Bayadi alleges no specific facts or conduct by Clarke or Fleming to support his retaliation claim. He only alleges that he filed two lawsuits against them in November 2014 and January 2015 and they had him transferred on August 31, 2015.[4] I conclude that Bayadi's bear allegations of retaliation are insufficient to survive summary judgment. Moreover, he has not demonstrated specific evidence that would establish that but for the alleged retaliatory motive, he would not have been transferred.[5] Accordingly, I will grant defendants' motion for summary judgment as to Bayadi's retaliation claim.

## VI.

To the extent Bayadi raises a procedural due process claim concerning his transfer, it fails. In order to prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. *Bevrati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). Although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). An inmate does not have a federal right to be housed in any particular VDOC facility. *Meachum v. Fano*, 427 U.S. 215 (1976); *Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996). VDOC officials have broad discretion to determine the facility at which an inmate is housed. *See, e.g., Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). Furthermore, Bayadi fails to provide

---

[4] I note that defendant Clarke filed an affidavit stating that he has no personal involvement in determining Bayadi's housing assignment or classification status. And, defendant Fleming filed an affidavit stating that he has not discussed Bayadi with Clarke and did not coordinate Bayadi's transfer to Wallens Ridge.

[5] Rather, defendants present evidence that Bayadi was transferred to Wallens Ridge because of "continued non-compliance" with the grooming policy. Bayadi challenges this assertion, but recognizes that defendants "have proven" that he was out of compliance only "one time," from March 2015 to June 2015.

8

any evidence to demonstrate that his transfer from Keen Mountain to Wallens Ridge is an atypical and significant hardship in relation to the ordinary incidents of prison life. None of the conclusory descriptions of prison life at Wallens Ridge constitutes a violation of due process. *See, e.g., Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997). Moreover, Bayadi cannot rely on labels and conclusions to state an actionable claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, I will grant defendants' motion for summary judgment as to a procedural due process claim.

### VII.

To the extent Bayadi alleges that defendant Ravizee denied him access to the grievance procedure, his claim fails because an inmate has no constitutional right to participate in grievance proceedings. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).

Further, to the extent he alleges a conspiracy claim against Ravizee, it also fails. To establish a civil conspiracy under § 1983, a plaintiff must allege facts showing that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, resulting in the deprivation of a federal right. *Glassman v. Arlington Cnty., Va*, 628 F.3d 140, 150 (4th Cir. 2010) (citing *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)). A plaintiff must make specific allegations that each member of the alleged conspiracy shared the same conspiratorial objective, and the factual allegations must reasonably lead to the inference that the defendants came to a mutual understanding to try to "accomplish a common and unlawful plan." *Hinkle*, 81 F.3d at 421. As such, a complaint's allegations must amount to more than "rank speculation and conjecture," especially when the actions are capable of innocent interpretation. *Id.* at 422. And of course, a formulaic recitation of the elements will not do. Here, Bayadi offers only conclusory allegations of a conspiracy, which are insufficient to state a

claim for civil conspiracy. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, I will grant defendants' motion for summary judgment as to the claims against defendant Ravizee.

ENTER: This 17th day of February, 2017.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE